UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JEFFERY HUMPHREYS,           )<br>                              )<br>            Plaintiff,         )<br>                              )<br>       v.                     )<br>                              )<br>T. WATSON,                    )<br>MICHAEL UNDERWOOD,            )<br>BRAD SHOEMAKER,               )<br>TIMOTHY TAYLOR,               )<br>GORC,                         )<br>                              )<br>            Defendants.       ) | No. 2:19-cv-00461-JRS-MJD |

**ENTRY SUSTAINING DEFENDANTS' AFFIRMATIVE DEFENSE OF EXHAUSTION
AFTER *PAVEY* HEARING AND
DIRECTING ENTRY OF FINAL JUDGMENT**

This action is brought by Jeffery Humphreys, who was formerly confined at the Federal Correctional Complex in Terre Haute, Indiana ("FCC-Terre Haute"). Mr. Humphreys brings claims under the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971). He alleges that the defendants violated his Eighth Amendment rights by knowing that he was a protective custody inmate but failing to protect him from two separate attacks by other inmates on May 1 and August 28, 2019.

The defendants asserted the affirmative defense that Mr. Humphreys failed to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") before filing this action. Because the defendants notified the Court that there were genuine issues of material fact as to whether the administrative remedy process was available to Mr. Humphreys, dkt. 41, a hearing in

1

accordance with *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008) was scheduled. Pro bono counsel was recruited to assist Mr. Humphreys in preparation for and participation in the hearing.

The *Pavey* hearing was conducted on November 19, 2020. Mr. Humphreys was present by videoconference. He was ably represented by recruited counsel.[1] Defendants were present and appeared by counsel. Documentary evidence was submitted in addition to testimony from witnesses.

For the reasons explained in this Entry, the Court finds that the defendants met their burden of proof by showing that Mr. Humphreys failed to exhaust his available administrative remedies before filing this lawsuit.

## I.  Motion *in Limine*

Defendants' motion *in limine* asks the Court to preclude Mr. Humphreys from offering: (1) any testimony from inmate Kurt Michael Adams, aka Ashley Adams; (2) testimony from inmate Michael G. Stine except to the extent he testifies to direct personal knowledge regarding Humphreys' efforts to obtain administrative remedy forms; and (3) the Complaint or its supporting affidavit as evidence for the truth of the matters asserted in those documents.[2]

"In 'bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.'" *United States v. Reed*, 744 F.3d 519, 525 (7th Cir. 2014) (quoting *Harris v. Rivera,* 454 U.S. 339, 346–47 (1981)). "Judges often hear improper argument and other forms of inadmissible evidence that they are presumed to disregard when deciding matters of importance." *United States v. Stinefast,* 724 F.3d 925, 931 (7th Cir. 2013). That is the case here.

---

[1] The Court greatly appreciates the significant time and efforts of volunteer counsel Justin Wiser of Katz Korin Cunningham, PC and Eric Riegner of Frost Brown Todd LLC, in representing Mr. Humphreys.

[2] The motion *in limine* discusses the Complaint filed in this case, but during the hearing, the defendants argued that they wished to bar the Complaint filed by Adams in 2:19-cv-341-JRS-DLP. *See* Ex. 100; dkt. 107 at 15:15-20.

Nonetheless, the motion *in limine,* dkt. [89], is **granted in part and denied in part,** consistent with the following discussion.

The motion *in limine* is **denied as moot** as to any testimony from Adams because Adams did not appear as a witness nor did she otherwise offer any admissible testimony. To the extent Adams' testimony about her own experiences in trying to obtain grievance forms might have been offered after the hearing, the motion *in limine* is **granted** because the minimal probative value of such testimony would have been outweighed by the unfair prejudice to the defendants. *See* Fed. R. Evid. 404(b)(1).

With respect to any proffered testimony from Mr. Stine, the motion *in limine* is **denied as moot** to the extent he did not appear as a witness. The motion *in limine,* however, is **granted to the extent** that Mr. Stine's anticipated testimony would have related to his own attempts to obtain administrative remedy forms. As with Adams' anticipated testimony, such testimony is barred by Rule 404(b) of the Federal Rules of Evidence.

To the extent the third part of the motion *in limine* is directed at the Complaint and supporting affidavits filed in this case, the motion is **granted** on the basis of hearsay. To the extent the motion is directed at Ms. Adams' Complaint and her statement that all USP Terre Haute staff refused to provide her administrative grievances, Ex. 100 at 2-3, the motion is **granted** on the basis of relevance.

## II. Legal Standards

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). The statutory exhaustion requirement is that "[n]o action shall be brought with respect to prison conditions…by a prisoner…until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

"To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require.") (internal quotation omitted). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendants' burden to establish that the administrative process was available to Mr. Humphreys and that he failed to use it. *Reid,* 962 F.3d at 329; *see also Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### III. Findings of Fact and Conclusions of Law

The following facts are found by the Court to be true based on the stipulated facts (dkt. 101) and the testimony and documents presented during the hearing.

Mr. Humphreys arrived at the United States Penitentiary in Terre Haute, Indiana ("USP

Terre Haute") on or about April 1, 2019, where he was housed until December 2, 2019. Mr. Humphreys was sometimes housed in the general population at USP Terre Haute and at other times he was housed in the Special Housing Unit ("the SHU").

The Bureau of Prisons ("BOP") has promulgated an administrative remedy process that is codified in 28 C.F.R. § 542.10, *et seq.*, and in BOP Program Statement ("P.S.") 1330.18 (the "Administrative Remedy Process"). To exhaust his remedies, pursuant to 28 C.F.R. § 542.13(a), "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. Each Warden shall establish procedures to allow for the informal resolution of inmate complaints." *Accord* P.S. 1330.18 at 4 (¶ 7.a.).

The BOP typically uses a form called a "BP-8" for the informal resolution process. The "informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution." 28 C.F.R. § 542.13(b).

According to the applicable regulations and P.S. 1330.18, an inmate who is dissatisfied with the result of his attempt at informal resolution or wishes to bypass informal resolution may submit "the appropriate form (BP-9)" to "the institution staff member designated to receive such Requests (ordinarily a correctional counselor)." 28 C.F.R. § 542.14(a), (c); *accord* P.S. 1330.18 at 4.

If the Administrative Remedy Program is available to the inmate, "the deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a).

If the inmate is dissatisfied with the response to his BP-9, he may appeal to the Regional Director by submitting a form BP-10 to the appropriate Regional Office "within 20 calendar days of the date the Warden signed the response" to the BP-9. 28 C.F.R. § 542.15(a); P.S. 1330.18 at 6–7. An inmate who is not satisfied with the Regional Director's response to his BP-10 "may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a).

Administrative remedy submissions, with the exception of BP-8s, are tracked in a BOP database called SENTRY. Dkt. 107 at 36:2-5. Beginning on June 30, 2016, Mr. Humphreys pursued administrative remedies relating to a security/custody issue through every level of the formal process, from BP-9 through a BP-11. *Id.* at 37:7-25-38:1-14; Ex. 3. Mr. Humphreys understood how the process worked. Dkt. 107 at 148:4-6.

Four distinct incidents are at issue in this case. First, Mr. Humphreys was not transferred immediately into protective custody when he arrived at the USP Terre Haute on April 1, 2019; second, he was assaulted by another inmate on May 1, 2019; third, he was transferred from B-2 housing unit to general population on July 18, 2019; and fourth, he was assaulted again on August 28, 2019.[3] Dkt. 107 at 155:13-21. After the first time he was stabbed, Humphreys learned in early June that he was going to be transferred to another prison, so he started to relax about his safety at that point. *Id.* at 142:19-143-3. A couple weeks later he was told he was not going to be transferred. *Id.* at 143:6-17. In late June, he asked his case manager Vaughn for a BP-8, but Vaughn was working overtime as a safety officer and did not have forms with him. *Id.* at 144:6-20. Case manager Vaughn told Humphreys to ask counselor Orr for a form on Thursday. *Id.* at 144:18-20.

---

[3] On direct examination, Mr. Humphreys testified that he was stabbed by another inmate on the last Wednesday of April 2019. Dkt. 107 at 139:15. The Court takes judicial notice that the last Wednesday of April was April 24, 2019. Mr. Humphreys alleged in his complaint that he was stabbed May 1, 2019. Dkt. 1 at 4. May 1 was a Wednesday, so the Court will assume that the alleged stabbing occurred on May 1.

6

Mr. Humphreys testified that the following Thursday, the last week of June, he asked counselor Orr if he had any BP-8s with him. *Id.* at 145:24; 167:6-11. Counselor Orr told him he did not have a file with him and to get with him when Humphreys got to B-2 (the unit where he was being transferred). *Id.* at 145:25-146:1.

Orr was Mr. Humphreys' counselor between April and July 2019. Dkt. 37 at 101-02; 161:22-161:9. With respect to administrative remedy paperwork, Orr testified that "[w]e hand those forms out every day. It's like giving out candy on Halloween. That's what we do." *Id.* at 100:3-4. Orr carries a satchel with him that has various forms in it. *Id.* at 100:5-6. He testified that he has never denied an inmate administrative remedy forms. *Id.* at 100:9-16. The fact that approximately 136 BP-9s were submitted by inmates housed in the USP Terre Haute SHU or its Special Confinement Unit between April 1, 2019, and September 20, 2019, supports Orr's testimony that the forms are given out routinely. *Id.* at 42:4-12.

Even if counselor Orr told Humphreys that he did not have the forms with him at the time he asked and told him to ask him again when he was transferred, the timing of Humphreys' request is significant. The last week of June 2019, Humphreys asked for an administrative remedy form regarding the claims he brings in this case. *Id.* at 167:6-11. This was more than 20 days after he first arrived at USP Terre Haute on April 1 and more than 20 days after he was assaulted on May 1, 2019. His request for a form was made before he was transferred to general population on July 18 and before he was assaulted on August 28, 2019. Therefore, even if Orr had failed to give him the BP-8 form when asked in late June, Humphreys' contention that he did not complete the administrative remedy process *because* of Orr's refusal to provide forms does not excuse Humphrey's failure to exhaust his administrative remedies. If Orr had given him the BP-8 in late June, Humphreys still would not have timely initiated or completed the grievance process as to

7

any of his claims. He was too late for two claims and too early for the others. Indeed, Humphreys signed his complaint on September 15, 2019, which is before he could have completed the process as to his August 28, 2019, failure to protect claim. Dkt. 1.

Mr. Humphreys did not submit a BP-8, BP-9, or any other administrative remedy form before he filed this action. This circuit takes "a strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (internal quotation omitted). "An inmate must comply with the administrative grievance process that the State establishes, at least as long as it is actually available to the inmate." *Wilborn v. Ealey,* 881 F.3d 998, 1004 (7th Cir. 2018). Here, the defendants have established that Mr. Humphreys was aware of the administrative process. There is no evidence showing that Humphreys was prevented from accessing the grievance process at the relevant times. The process was available to Mr. Humphreys, but he failed to use it.

## IV. Conclusion

The defendants' defense of failure to exhaust available administrative remedies relating to Mr. Humphreys' claims is **sustained.** The claims are **dismissed without prejudice.** *See Ford,* 362 F.3d at 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

Judgment consistent with this Entry shall now issue.

IT IS SO ORDERED.

Date: 5/18/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

8

Distribution:

JEFFERY HUMPHREYS
09704-074
TUCSON - USP
TUCSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 24550
TUCSON, AZ 85734

Justin R. Olson
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
justin.olson2@usdoj.gov

Eric A. Riegner
FROST BROWN TODD LLC (Indianapolis)
eriegner@fbtlaw.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Justin Michael Wiser
KATZ  KORIN CUNNINGHAM, P.C.
jwiser@kkclegal.com